## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

SAVANNAH HUDSON, individually and on
behalf of all others similarly situated,

    *Plaintiff*,

vs.

BEAM DISTRIBUTING, INC. D/B/A PELICAN
COOLERS,

    *Defendant.*

_____/

CLASS ACTION   23-CV-337-GLJ

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Savannah Hudson ("Plaintiff"), brings this class action against Defendant, Beam Distributing, Inc. d/b/a Pelican Coolers ("Defendant"), and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.    "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.    This is a putative class action pursuant to Oklahoma's Telephone Solicitation Act of 2022 (the "OTSA"), Okla. Stat. tit. 15 § 775C.1, *et seq*. The OTSA was enacted to help fight robotexts like the ones at issue in this case.

3.    Defendant is a national retailer of outdoor products, including but not limited to coolers, protective cases and more.

4.    To promote its goods and services, Defendant engages in aggressive telephonic sales calls to consumers without having secured prior express written consent as required under the OTSA.

5.    Defendant's telephonic sales calls have caused Plaintiff and the Class members harm, including violations of their statutory rights, statutory damages, annoyance, nuisance, and invasion of their privacy. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' cellular telephones.

6.    Through this action, Plaintiff seeks an injunction and statutory damages on behalf of herself and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

7.    Plaintiff is a natural person who, at all times relevant to this action, was a resident of Carter County, Oklahoma.

8.    Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Okla. Stat. tit. 15 § 775C.2.1. in that Plaintiff was the regular user of cellular telephone number that received Defendant's commercial telephonic sales calls.

9.    Defendant is, and at all times relevant hereto was, a Virginia corporation and a commercial telephone seller.  Defendant maintains its primary place of business and headquarters in Ashland, Virginia. Defendant directs, markets, and provides business activities throughout the State of Oklahoma and the United States.

## JURISDICTION AND VENUE

10.      Jurisdiction is proper under 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks $500 (five-hundred dollars) in damages for each call in violation of the OTSA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

11.      Defendant is subject to specific personal jurisdiction in Oklahoma because this suit arises out of and relates to Defendant's significant contacts with this State. Defendant initiated and directed, or caused to be initiated and directed, calls into Oklahoma in violation of the OTSA. Specifically, Defendant initiated and directed, or caused to be initiated and directed, the transmission of calls into Oklahoma. Plaintiff's claims for violation of the OTSA against Defendant, and the resulting injuries caused to Plaintiff by Defendant's calls, which includes the invasion of Plaintiff's privacy, arose in substantial part from Defendant's direction of those messages into Oklahoma.

12.      Venue is proper in the United States District Court for the Eastern District of Oklahoma pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Oklahoma and, on information and belief, Defendant has sent the same messages complained by Plaintiff to other individuals within this judicial district, such that some

of Defendant's acts in making such calls have occurred within this district, subjecting Defendant

to jurisdiction in the State of Oklahoma.

**FACTS**

13.    Beginning on or about January 2023 and continuing through June 2023, Defendant

began bombarding Plaintiff's cellular telephone number ending in \*\*\*-\*\*\*-3812 (the "3812

Number") with text message solicitations including but not limited to the following examples, on

February 4, 2023 and June 14, 2023:



14.    As demonstrated by the above screenshot, the purpose of Defendant's messages was to solicit the sale of consumer goods and/or services. The messages contained language such as "FLASH SALE! 20% off 20QT Elite Coolers with promo code BONUS20."

15.    Defendant's calls were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

16.    Plaintiff utilizes her cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line. In other words, Plaintiff's cellular telephone is Plaintiff's home telephone number and Plaintiff makes and receives personal calls on her cellular telephone. Moreover, Plaintiff's cellular telephone is the primary means of reaching Plaintiff at her residence.

17.    Defendant's calls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff elite coolers.

18.    At no point in time did Plaintiff provide Defendant with her express written consent to be contacted.

19.    Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

20.    Upon information and belief, Defendant caused similar telephonic sales calls to be sent to individuals residing in Oklahoma and throughout the United States.

21.    Plaintiff is the regular user of the telephone number that received the above telephonic sales calls.

22.     To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform. Defendant's use of lengthy generic text messages (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

23.     The telephone number utilized by Defendant to send the messages (833-269-8707) is not capable of receiving telephone calls and does not connect the call recipient, upon calling such number, to Defendant.

24.     Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

25.     Defendant would be able to conduct its business operations without sending automated text messages to consumers.

26.     Defendant would be able to send automated text messages to consumers, and in compliance with the OTSA, by securing the proper consent from consumers prior to sending text messages.

27.     Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

28.     Accordingly, it is not impossible for Defendant to comply with the OTSA in the context of transmitting text messages.

29.     The burden and cost to Defendant of securing consent from consumers that complies with the OTSA is nominal.

30.     Compliance with the OTSA will not result in Defendant having to cease its business operations.

31.     Compliance with the OTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

32.     Compliance with the OTSA will not force Defendant to seek regulatory approval from the State of Oklahoma before undertaking any type of commercial transaction.

33.     The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

34.     The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

35.     The Platform also has an auto-reply function that results in the automatic transmission of text messages.

36.     Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

37.     More specifically, Plaintiffs never signed any type of authorization permitting or allowing the placement of telephonic sales calls by text message using an automated system for the selection and dialing of telephone numbers.

38.     Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

39.    The text messages originated from telephone number 833-269-8707, a number which upon information and belief is owned and operated by Defendant or on behalf of Defendant.

40.    Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and wasted time. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones.

## CLASS ALLEGATIONS

### PROPOSED CLASS

41.    Plaintiff brings this lawsuit as a class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23. The "Class" that Plaintiff seeks to represent is defined as:

> **OTSA Autodialer Class All persons in Oklahoma who, (1) were sent one or more text messages regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff, (3) from November 1, 2022 through the date of class certification.**
>
> **OTSA Caller ID Class: All persons in Oklahoma who, (1) were sent one or more text messages regarding Defendant's property, goods, and/or services, (2) through a use of any long-code, (3) from November 1, 2022 through the date of class certification.**

42.    Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the exact number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

43.    Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers via an automated dialer without their

prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

44.    The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

45.    There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

[a] Whether Defendant initiated commercial telephonic sales calls/texts to Plaintiff and the Class members;

[b] Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

[c] Whether Defendant utilized an automated system for the dialing or selection of numbers to be called;

[d] Whether Defendant is liable for damages, and the amount of such damages.

46.    The common questions in this case are capable of common answers. If Plaintiff's claim that Defendant routinely transmits telephonic sales calls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

47.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories and Plaintiff is not subject to unique affirmative defenses that threaten to dominate the litigation.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

48.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

49.     The undersigned are experienced class action litigators, including in the specific context of the telemarketing violations, and neither Plaintiff nor the undersigned have any interests in conflict with those of the putative Class.

### SUPERIORITY AND PREDOMINANCE

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small ($500.00) to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

51.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another

may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

52.     Moreover, the previously articulated common questions predominate over individual questions. Defendant used the same automated system to send materially identical telemarketing messages to all members of the putative Class. Whether the fact that Class members provided information into a generic data harvesting lead generator constitutes valid consent within the meaning of the OTSA is a question the answer to which is equally applicable to all members of the Class. As such, there are no material individual questions at all—but even if there were, they certainly do not predominate over the common questions.

### COUNT I
### VIOLATION OF OKLA. STAT. TIT. 15 § 775C.3
#### (On Behalf of Plaintiff and the Putative Class)

53.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

54.     It is a violation of the OTSA to "make or knowingly allow a commercial telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Okla. Stat. tit. 15 § 775C.3.A.

55.     "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. clearly authorizes the person making or allowing the placement of a commercial telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

   a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

   b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Okla. Stat. tit. 15 § 775C.2.3.

56.     Defendant failed to secure prior express written consent within the meaning of the OTSA from Plaintiff and the Class members.

57.     In violation of the OTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without their prior express written consent.

58.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

59.     As a result of Defendant's conduct, and pursuant to section 775C.6 of the OTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

60.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT II**
**VIOLATION OF OKLA. STAT. TIT. 15 § 775C.3**
**(On Behalf of Plaintiff and the OTSA Caller ID Class)**

61.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

62.     The OTSA provides in pertinent part: "If a telephone number is made available through a caller identification service as a result of a commercial telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a commercial telephonic sales call was placed." Okla. Stat. tit. 15 § 775C.3.B.

63.     In violation of the OTSA, Defendant sent text messages to Plaintiff and the Class members utilizing a long-code telephone number(s) that does not accept incoming calls and does not connect call recipients with Defendant.

64.     Accordingly, Defendant's text messages to Plaintiff and the Class members violated section 775C.3.B of the OTSA.

65.     As a result of Defendant's conduct, and pursuant to section 775C.6 of the OTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

66.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Class as applicable under the OTSA;

c) An order declaring that Defendant's actions, as set out above, violate the OTSA;

d) An injunction requiring Defendant to cease all telephonic sales calls made without valid consent under the OTSA, and to otherwise protect the interests of the Class;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

Dated: October 4, 2023                    Respectfully submitted,

                                          **SHAMIS & GENTILE P.A.**
                                          /s/ Andrew Shamis
                                          Andrew J. Shamis, Esq.
                                          Florida Bar No. 101754
                                          ashamis@shamisgentile.com
                                          14 NE 1st Ave., Suite 705
                                          Miami, Florida 33132
                                          Tel: (305) 479-2299

                                          *Counsel for Plaintiff*

                                          **CAIN LAW OFFICE**

Monty L. Cain, #15891
Rilee D. Harrison, #33742
CAIN LAW OFFICE
10415 Greenbriar Place
Oklahoma City, Oklahoma 73159
(405) 759-7400 Telephone
(405) 759-7424 Facsimile
monty@cainlaw-okc.com
Attorneys for Plaintiffs

*Counsel for Plaintiff*